IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAVONA HILL, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BERT BELL/PETE ROZELLE NFL | : | |
| PLAYER RETIREMENT PLAN, et al., | : | No. 09-4051 |
|     Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                                                    November 4, 2010

      Who is entitled to the benefits of former National Football League running back Thomas Sullivan ("Thomas")? The Bert Bell/Pete Rozelle NFL Player Retirement Plan and the Retirement Board of the Bert Bell/Pete Rozelle NFL Player Retirement Plan (collectively "the NFL Defendants") filed an interpleader action to answer that question. Barbara Sullivan was married to Thomas at the time of his death and was receiving benefits from the NFL Defendants. Unbeknownst to her, Thomas had been married to Lavona Hill and had never secured a divorce from her prior to marrying Barbara. The Court conducted a bench trial on October 21, 2010, and pursuant to Federal Rule of Civil Procedure 52(a), the Court enters the following findings of fact and conclusions of law.

### I.    FINDINGS OF FACT

      Lavona Hill met Thomas Sullivan in the 1970s through a friend of her family. (Trial Tr. at 15.) They dated in the mid-1970s. (*Id*. at 16.) Thomas had been married and divorced once before, although Hill was unaware of that fact. (*Id*. at 36.) Hill had been married to Arthur Wells in 1975 but the couple divorced in 1978. (*Id*. at 29, 32.) Hill married Thomas in Baltimore, Maryland on March 15, 1979. (Admin. R. Ex. 4 [MD Marriage License].) Neither Thomas Sullivan nor Lavona

Hill divorced or annulled the marriage. (Trial Tr. at 17, 22.) They lived as husband and wife in Media, Pennsylvania as well as in Ohio during their marriage. (*Id*. at 17-18.)

Thomas played professional football from 1972 to 1978 for the Philadelphia Eagles and the Cleveland Browns. Based on his years of service in the NFL, he and his beneficiaries were entitled to certain benefits, including death benefits. Specifically, the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("the Plan") provided:

> **7.2** **Widow's and Surviving Children's Benefit.** If a Player dies before the date his retirement benefits begin, and he was, at the time of his death, (a) an Active Player, (b) a Vested Inactive Player who is vested solely because of Credited Seasons, and not by reason of Years of Service after ceasing to be an Active Player, or (c) entitled to disability benefits under Articles 5 or 6 (regardless of when such entitlement is determined), his surviving Spouse, or if there is no surviving Spouse, his surviving minor children, if any, will, subject to Section 7.4. below, receive a monthly widow's and surviving children's benefit equal to the greater of (a) 50% of the Player's Benefit Credits, or (b) $1,200. Further, for the first 48 months following such Player's death, the amount of this benefit will be (a) for a Player who is an Active Player after the 1976 Plan Year, no less than $2,000 per month, and (b) for a Player who is an Active Player after the 1981 Plan Year, no less than $3,000 per month.

(Interpleader Compl. ¶ 12.) Effective April 1, 2006, certain benefits under the Plan were increased such that a qualified individual would:

> receive a monthly widow's and surviving children's benefit equal to the greater of (a) 50% of the Player's Benefit Credits, or (b) $3,600. Further, for the first 48 months following such Player's death, the amount of this benefit will be (a) for a Player who is an Active Player after the 1976 Plan Year, no less than $6,000 per month, and (b) for a Player who is an Active Player after the 1981 Plan Year, no less than $9,000 per month. For payments with respect to months prior to April 1, 2006, the Widow's and Surviving Children's Benefit will be determined based on the Plan in effect for such periods.

(Interpleader Compl. Ex. 1 [Plan].) The Plan defines "Spouse" as "a Player's lawful spouse, as

2

recognized under applicable state law . . . or a former spouse to the extent provided under a Qualified Domestic Relations Order." (*Id*.)

According to Hill, Thomas suffered from drug and alcohol problems throughout their relationship, problems that Hill unsuccessfully tried to help him overcome. (Trial Tr. at 19.) She also testified that they planned to build a home together in Pennsylvania but that never occurred. (*Id*. at 21.) They would at times travel to South Carolina, where they would stay as husband and wife. (*Id*. at 20.) Sometime around 1983, Thomas went to South Carolina "on a more permanent basis" to help his family build a home. (*Id*. at 19-20.) Thomas and Hill stopped living together as husband and wife around 1983 and last had contact with each other around 1985. (*Id*. at 20-21, 36.)

On March 15, 1986, Thomas married Barbara Hicks Carson (neé Hicks) in South Carolina. (Admin. R. Ex. 9 [SC Marriage License].) Both the bride and groom listed the marriage as their second. (*Id*.) In 1991, Thomas designated Barbara as his current living spouse. (*Id*. Ex. 20 [Marital Status Questionnaire and Consent].) Barbara also submitted a notarized statement confirming that she was Thomas's "legal spouse." (*Id*.)

Thomas Sullivan died on October 10, 2002. Hill learned about his death from her son. (Trial Tr. at 36-37.) Thereafter, Hill attempted to claim social security benefits as his widow but she was too young. (*Id*. at 27.) In 2006, she again applied for widow's insurance benefits through social security. The Social Security Administration determined that Hill was entitled to benefits as Thomas's widow. (Pl.'s Tr. Ex. 2 [Soc. Sec. Determination].) Hill was also notified that she may be entitled to benefits as a result of Thomas's professional football career. (Admin. R. Ex. 80 [Potential Private Pension Benefit Info.]; Trial Tr. at 25-26.) She eventually learned that Barbara Sullivan was receiving benefits under the Plan.

Shortly after Thomas's death, Barbara made a claim for benefits under the Plan. (Admin. R. Ex. 50 [Application for Widow's Death Benefits].) Her claim included her 1986 South Carolina marriage license to Thomas Sullivan and stated that she was Thomas's wife at the time of his death. (*Id*.) Beginning in November of 2002, the Plan began paying Barbara benefits. (*Id*. Ex. 56 [Nov. 5, 2002 Letter].) On a number of subsequent occasions, Barbara certified her eligibility to receive benefits under the Plan.

On November 28, 2006, Hill sent a letter to the Plan seeking benefits as the surviving spouse of Thomas Sullivan. (*Id*. Ex. 71 [Nov. 28, 2006 Letter].) Hill later submitted her 1979 Maryland marriage certificate to Thomas as proof of her marriage and entitlement to benefits as Thomas's surviving spouse. (*Id*. Ex. 72 [Feb. 22, 2007 Letter].) Although the Plan invited Hill to submit additional evidence, she failed to do so. (*Id*. Ex. 75 [Mar. 13, 2007 Letter].) The Plan requested that Hill seek a court order that identified Thomas's surviving spouse. (*Id*. Ex. 79 [Apr. 24, 2007 Letter].) Effective May 1, 2007, the Plan suspended payments to Barbara "pending a judicial decision instructing the Plan as to where to send future benefit payments." (*Id*.) Barbara subsequently reiterated her eligibility to receive Thomas's benefits and Hill failed to seek a court order; the Plan therefore resumed payments to Barbara retroactive to May 2007. (*Id*. Ex. 87 [Sullivan Statement]; *Id*. Ex. 95 [Feb. 20, 2008].)

In 2008, Hill again wrote to the Plan seeking benefits. (*Id*. Ex. 97 [Aug. 19, 2008 Letter].) On August 13, 2009, Hill sued the NFL Defendants in the Philadelphia Court of Common Pleas. The Complaint accused the NFL Defendants of acting in bad faith by having failed to pay benefits to Hill. The Complaint alleged no wrongdoing on the part of Barbara Sullivan nor did it include a cause of action against her. On September 4, 2009, the NFL Defendants removed the case to this

4

Court because the Plan was governed by ERISA. Hill filed an Amended Complaint on September 24, 2009, under ERISA against the NFL Defendants. The Amended Complaint made no allegations and pled no causes of action against Barbara Sullivan. In fact, the name "Barbara Sullivan" does not appear in the Amended Complaint. On October 13, 2009, the NFL Defendants answered the Amended Complaint and filed an interpleader counterclaim against Hill and Barbara Sullivan. Hill answered the interpleader counterclaim. Once again, she raised no claim against Barbara Sullivan.

According to the NFL Defendants, the Plan has made $192,900 in payments to Barbara, has interpled $29,700 beginning November 2, 2009, and will pay a total of $2,700 per month to either Hill or Barbara going forward. (Trial Tr. at 48.)

## II. CONCLUSIONS OF LAW

### A. Interpled and Prospective Benefits

Barbara and Thomas Sullivan were married in South Carolina; the Court will therefore apply South Carolina law to determine whether Hill or Barbara is entitled to interpled and future benefits. South Carolina's bigamy law reads:

> All marriages contracted while either of the parties has a former wife or husband living shall be void. But this section shall not extend to a person whose husband or wife shall be absent for the space of five years, the one not knowing the other to be living during that time, not to any person who shall be divorced or whose first marriage shall be declared void by the sentence of a competent court.

S.C. Code Ann. § 20-1-80. The South Carolina bigamy statute considers the couple's marital status at the time of the marriage. *Lukich v. Lukich*, 666 S.E.2d 906, 907 (S.C. 2008). Thus, "a marriage ceremony between a man and a woman, where one of them has a living wife or husband, is not a marriage at all. Such a marriage is absolutely void, and not merely voidable." *Day v. Day*, 58 S.E.2d

83, 85 (S.C. 1950); *see also Johns v. Johns*, 420 S.E.2d 856, 858 (S.C. Ct. App. 1992) (noting that an illicit relationship does not ripen into a valid one once the impediment to validity is removed).

Hill was alive at the time Thomas and Barbara married. There is nothing in the record to suggest Hill or Thomas Sullivan ever divorced or had their marriage declared void by a competent court. Thus, according to South Carolina law, the marriage of Barbara and Thomas is void unless Hill or Thomas Sullivan was absent for a period of five years and the one spouse was not aware whether or not the other spouse was living during that time. Barbara Sullivan argues that, based on a document in which Hill told the Social Security Administration that she left Thomas sometime around February of 1979, Hill walked out on the marriage.[1] Regardless of which spouse left the other or whether it was a mutual split, the Court concludes that the ultimate result would still be a void marriage under South Carolina law.

If Thomas abandoned Hill or their separation was mutual, Thomas is not entitled to a presumption that Hill was absent from the marriage for five years. "[T]he presumption of death after a lapse of seven years enures to the benefit of the spouse who has been abandoned."[2] *Day*, 58 S.E.2d at 85. South Carolina law never intended for a husband or wife to become legally divorced after a statutory waiting period by walking away from their union. The Court would not apply the absence exception if Hill left Thomas Sullivan because "in order to obtain the benefit of the presumption, evidence must be introduced that diligent search and inquiry have been made." *Id.*; *see also In re Duncan's Estate*, 2 S.E.2d 388, 391 (S.C. 1939) (noting that inquiry "should embrace all reasonably

---

[1] This time frame cannot be correct given that Thomas and Hill married in March of 1979.

[2] The South Carolina bigamy law was amended in 1990. It previously required a seven year absence.

patent sources of information which the circumstances of the case suggest, including an inquiry made of the persons and at the places where news of him, if living, would most probably be had"). The only evidence before this Court is that neither woman had any knowledge of the existence of the other until after Thomas Sullivan died. There is nothing to suggest that Thomas attempted to find Hill after she left him. Barbara Sullivan invites the Court to presume Thomas searched for Hill because Hill abandoned Thomas. This presumption finds no support in South Carolina law. Furthermore, the record shows that Hill lived with her family and could have readily been located. The Court cannot speculate that Thomas searched for Hill when no shred of evidence exists to bolster that speculation. Thus, no exception to the South Carolina bigamy law applies here.

This case is factually similar to *Day*. Maggie Lee Day sought worker's compensation benefits after her husband, James Day, died on the job. Maggie and James married on November 3, 1934. However, Maggie Lee had married Marion Duncan on February 4, 1919. They lived as husband and wife in Greenwood County for a couple of years but soon separated. Maggie Lee moved away to Greenville, South Carolina but in 1923 she saw Marion; Marion told Maggie that he had remarried and Maggie therefore believed that Marion was no longer her husband. Maggie Lee remained in Greenville until 1930 and then returned to live in Greenwood County. At the time of her marriage to James, Maggie Lee made no inquiry about Marion's whereabouts or whether he was alive. James and Maggie Lee lived as husband and wife until James died in 1948. Apparently, during the marriage of James and Maggie Lee, Marion lived in Greenwood County, only five miles from the Days.

The Supreme Court of South Carolina determined that Maggie Lee was not entitled to benefits as James's wife because there was no evidence that Marion abandoned Maggie Lee or was

7

absent for a period of seven years. Marion stayed in the same area and Maggie never tried to find him. Her marriage to James was thus bigamous and void from its inception. The court rejected any equitable argument Maggie Lee could put forward as counter to South Carolina's public policy against bigamy. *Day*, 58 S.E.2d at 88.

Although the Court sympathizes with Barbara's Sullivan's position, her suggested reading of South Carolina law is inconsistent with the state's strong stance against bigamy. Two people cannot dissolve a marriage by simply being apart for five years and thus forego the formal avenues created by South Carolina law to dissolve a marriage. Additionally, Barbara Sullivan's good faith belief that she was legally married is insufficient to validate her marriage. *See Lukich v. Lukich*, 627 S.E.2d 754, 758 (S.C. Ct. App. 2006). Finally, Barbara Sullivan suggests that this Court apply Section 209 of the Uniform Marriage and Divorce Act. This law codifies the putative spouse doctrine, which states that any person living with another with a good faith but legally incorrect belief that they are married "acquires the rights conferred upon a legal spouse . . . whether or not the marriage is prohibited or declared void." South Carolina has not adopted the putative spouse doctrine. *Boyd v. Waterfront Emp'rs ILA Pension Plan*, 182 F.3d 907 (S.C. 1999). Thus, it remains the law in South Carolina that a second marriage is a legal nullity if the first marriage is not dissolved. *See id*. (citing *Day*, 58 S.E.2d at 85).

### B. Previously Paid Benefits

At trial, Hill's lawyer argued that Hill was entitled to a ruling from this Court that Barbara Sullivan should be required to pay back the $192,900 in benefits she has received. He argued that Hill had raised this claim and it would thus be expeditious to handle the previous benefits paid in the instant case. While this may be Hill's preferred method of resolution, this Court is not persuaded

8

that disposing of a potpourri of claims in one proceeding is factually, legally, or equitably warranted. The Court has reviewed the record and finds no evidence that Hill has at any point sued Barbara Sullivan for past benefits paid to her. Hill sued the NFL Defendants. It was the NFL Defendants who interpled Sullivan so the Court could resolve which woman is entitled to the interpled funds and future benefits. At no point has Barbara Sullivan been properly notified that she may be subject to an order from this Court requiring her to return close to $200,000 in benefits that she had no reason to believe might rightfully belong to somebody else. Both Sullivan and Hill have absolved the NFL Defendants of any liability for their actions, a position with which the Court agrees as a matter of law. (Trial Tr. at 5-6.) But if the NFL Defendants did not fumble Thomas Sullivan's benefits, then Hill must pursue her claims against Barbara Sullivan in the appropriate forum. The parties have not briefed or even raised what specifically Hill's claims against Barbara Sullivan would be and whether Barbara would have any legal or equitable defenses to such claims. This Court will not adjudicate an issue not properly before it and will therefore not address the issue of any money already paid to Barbara Sullivan.

### III. CONCLUSION

Because Thomas Sullivan remained married to Lavona Hill at the time he married Barbara, the marriage between Thomas and Barbara runs afoul of South Carolina's bigamy law. Thus, the Court concludes that Lavona Hill is entitled to the interpled funds as well as any prospective benefits under the Plan. The Court declines to address the issue of whether she is entitled to benefits already paid to Barbara Sullivan. The Court shall enter judgment in accordance with this Memorandum.

9